459 P.2d 353

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Filbert FORD and Eugene Cordova, Defendants-Appellants.**

**No. 325.**

Court of Appeals of New Mexico.

Sept. 19, 1969.

G. Gordon Robertson, Raton, for Filbert Ford.

John B. Wright, Wright & Kastler, Raton, for Eugene Cordova.

James A. Maloney, Atty. Gen., Santa Fe, Ethan K. Stevens, Asst. Atty. Gen., for appellee.

## OPINION

SPIESS, Chief Judge.

Filbert Ford and Eugene Cordova, co-defendants, appeal from convictions of burglary (Sec. 40A–16–3, N.M.S.A.1953), and larceny (Sec. 40A–16–1, N.M.S.A. 1953). Each defendant is urging different grounds for reversal.

Defendant Ford relies upon a single point. He contends that the trial court erred in denying his motion for a mistrial as a result of the prosecutor's comments to the jury indicating that Ford failed to protest his innocence at the time of arrest. We reverse for a new trial as to the defendant, Ford.

The arguments to the jury were not fully transcribed. Defendant, Ford, however, requested that a record be made of the particular remarks of which he complains.

The record in this respect discloses the following:

"MR. ROBERTSON: If the Court please, I would like the record to show the statement that was just made to the jury by Mr. Hobbes, at this time.

"MR. HOBBES: The statement was, that there is no evidence in this case, that Ford proclaimed his innocence, or protested it at the time he was arrested.

"MR. ROBERTSON: On the basis of that statement, the Defendant, Ford, moves for a mistrial.

"THE COURT: Denied."

We omit as immaterial to the issue presented here the circumstances relating to Ford's arrest, except that no testimony was offered as to any statement made by Ford at the time of arrest.

The statement employed by the prosecution in summation unquestionably suggested to the jury that Ford at the time of his arrest did not proclaim his innocence. By this method the state undertook to invoke a tacit admission by silence.

█ Ford was under no duty to say anything and silence should not have been employed against him. Having been arrested and charged with a crime he had the right to remain silent. It is fundamental that an inference of guilt may not be drawn from the mere failure to speak when under arrest. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Compare State v. Miller, 76 N.M. 62, 412 P.2d 240 (1966).

In Gillison v. United States, 130 U.S. App.D.C. 215, 399 F.2d 586 (1968), the court, considering a like situation, said:

"In Griffin v. State of California [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106] the Supreme Court held that the Fifth Amendment forbids prosecutor and court from commenting on an accused's failure to testify on his own behalf. The distance between that issue and the prosecutor's comments here about the accused's failure to make an exculpatory statement upon arrest is infinitesimal.

Indeed, in Miranda v. State of Arizona, the Supreme Court recognized the applicability of *Griffin* to this situation, when, at footnote 37, the Court noted that 'in accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.* Cf. Griffin v. State of California * * *; Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) * * * [Emphasis added].' Even where there is no interrogation and the accused merely remains silent, no weight whatever can be given to the accused's silence. We agree with the Second Circuit in United States v. Mullings [364 F.2d 173], that 'it is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested.' "

The State, while not admitting error, undertakes to invoke the harmless error rule; arguing, in substance, that the guilt of Ford was so overwhelming that the statement of the prosecutor was so "unimportant and insignificant * * *" as to be "deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967), rehearing denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

█ After close analysis of the record, it is our view that it cannot properly be contended that the evidence of guilt is overwhelming nor that the remark of the prosecutor was an inconsequential factor in the outcome of the case. It, of course, follows, that the harmless error rule is inapplicable here. The issue is resolved in Defendant Ford's favor.

The defendant, Cordova, convicted, as we have stated, of the crimes of burglary and larceny, relies upon three points for reversal: (1) the insufficiency of the evidence to support either of the verdicts; (2)

the failure of the information to state an offense under Count 1 (burglary) ; and (3) the failure of the information to state an offense under Count 2 (larceny).

The challenge to the sufficiency of the evidence, in our opinion, is without merit. It is argued that the evidence is wholly circumstantial and under established rules it is insufficient to support a conclusion of guilt.

■ Before considering the evidence upon which the conviction was based, it is well to bear in mind the rule relating to the probative force of such evidence; namely, that when circumstances alone are relied upon, they must point unerringly to the defendant and be incompatible with and exclude every reasonable hypothesis other than his guilt. State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966) ; State v. Flores, 76 N.M. 134, 412 P.2d 560 (1966) ; State v. Slade, 78 N.M. 581, 434 P.2d 700 (Ct. App.1967).

It is undisputed that at some time during the night of October 2nd, or early morning of October 3rd, 1967, an office occupied by Raton Housing Authority was burglarized and a safe, together with its contents, including $200.00 in cash, was removed from the office. The police, following a report to them of the burglary and theft, discovered the safe at the city dump. It had been broken into and the cash was missing.

It appears from the evidence that the hinges upon the safe were painted with a tan-grey lacquer and that an axe which had been found to the rear of the house occupied by defendant, Cordova, was examined by an expert who testified that he found heavy smears of tan-grey lacquer upon the side of the axe which matched the lacquer on the hinges of the safe. The expert also made a comparison of marks on the safe hinges with the axe and testified that the axe had made the marks upon the hinges. Dirt from the underside of defendant, Cordova's automobile matched the dirt from the area where the safe had been loaded. The tires of the same automobile

matched photographs of tire tread markings taken at the place where the safe was found. In addition, it appears that within a week following the burglary, insulation, paint particles and cement scrapings identified as insulation, paint and cement from the safe, were found in the trunk of the automobile owned by and in possession of the defendant, Cordova.

In an attempt to disassociate himself from the crime and to avoid the adverse effect of his possession of the material from the safe, Cordova testified that on October 1st, 1967, he had gone to Denver by bus leaving his automobile in Raton; that he returned to Raton during the morning of October 3rd. He suggests in argument that someone else may have used his automobile while he was in Denver. It appears from the testimony, however, that at a point south of Raton at 4:15 P.M. on October 2nd, 1967, Cordova had been issued a traffic citation for not having a driver's license; that he, personally, appeared before a Justice of the Peace after 5:00 P.M. on October 2nd, 1967.

■ Viewing the evidence in its most favorable aspect in support of the verdict, State v. Roybal, supra, we think it substantially supports the verdict and, in our opinion, the facts and circumstances are consistent with each other and are irreconcilable and inconsistent with any reasonable theory of innocence.

Defendant contends that State v. Seal, 75 N.M. 608, 409 P.2d 128 (1965), is controlling and supports his position. We disagree. The evidence in this case clearly distinguishes it from State v. Seal, supra. In Seal, none of the stolen property, nor any portions thereof, were found in Seal's possession. Here, as stated, portions of the stolen safe were found in defendant's possession.

Defendant's second point as stated in his brief is:

"That the Information fails to state an offense as to Count 1 in that the 'Raton Housing Authority' is not a legal entity, and should it be so construed, then

there is no substantial evidence to show that the Raton Housing Authority is a legal entity. * * *"

Count 1 of the information alleges:

"Did then and there unlawfully commit the crime of BURGLARY by entering without authorization a structure, to wit: the office of Raton Housing Authority, with intent to commit a felony or theft therein, contrary to the provisions of § 40A–16–3 New Mexico Criminal Code."

The statute under which defendant, Cordova, was convicted, § 40A–16–3, N.M.S.A., 1953, is as follows:

"Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.

"Whoever commits burglary is guilty of a fourth degree felony."

■ It is argued that in the absence of a proper allegation of ownership of the building allegedly entered the information fails to state an offense. The sufficiency of the information to charge an offense is to be tested under our rules of procedure and statutes defining the crime. State v. Cummings, 63 N.M. 337, 319 P.2d 946 (1957); Ex parte Williams, 58 N.M. 37, 265 P.2d 359 (1954); See State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945). Section 41–6–7(1), N.M.S.A., 1953, provides:

"(1) The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one [1] or more of the following ways:

"(a) By using the name given to the offense by the common law or by a statute.

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"(2) The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

The necessity of alleging ownership in charging an offense is stated in § 41–6–15, N.M.S.A.1953, as follows:

"(1) An indictment or information need contain no allegation of the ownership of any property, unless such allegation is necessary to charge the offense under section 42–607 [41–6–7].

"(2) In charging an offense in which an allegation of ownership of property is satisfied by proof of possession or right of possession any statement in an indictment, information or bill of particulars which implies possession or right of possession is a sufficient allegation of ownership."

■ The statute, § 40A–16–3, supra, clearly does not require that ownership of the building or structure entered be alleged, nor is such allegation necessary to charge the offense. We hold that, except as a means of identification, an allegation or proof of ownership of a building or structure the subject of a burglary charge is unnecessary. We do point out that the language of Count 1 of the information involved here sufficiently negatives ownership in the defendant and adequately identifies the building alleged to have been entered.

Cordova's third point is as follows:

"That there is a complete failure of proof to sustain the verdict of guilty against the Defendants on Count 2 of the Information in that there is a failure of proof that the Defendant was guilty of stealing anything from 'another' since there is no proof that the Raton Housing Authority is a legal entity. * * *"

Under this point, as under point 2, defendant challenges the sufficiency of the information to charge an offense and likewise a failure of essential proof upon the

654

same ground, namely, that Raton Housing Authority is a non-entity.

The crime of larceny of which defendant was convicted is defined in § 40A–16–1, N.M.S.A.1953, in the following language:

"Larceny consists of the stealing of anything of value which belongs to another."

 A witness, who identified himself as Executive Director of Raton Housing Authority, testified that it is a subdivision of the City of Raton. Judicial notice may also be taken of the fact that Raton Housing Authority is an agency of the City of Raton. (Secs. 14–46–1 to 14–46–25, N.M.S.A., 1953).

Consequently, money of Raton Housing Authority was not property belonging to defendant, Cordova. Neither an allegation or proof of ownership in a particular person is an essential element of the offense of larceny, it being sufficient that the proof disclosed that property stolen belonged to one other than defendant. Compare State v. Shroyer, supra.

Accordingly, the judgment is affirmed as to Defendant, Cordova, and is reversed as to Defendant, Ford, with directions that Defendant, Ford, be granted a new trial.

It is so ordered.

WOOD and HENDLEY, JJ., concur.