**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Reynaldo Gilberto JIMINEZ–BADILLA,
Defendant-Appellant.**

**No. 25577.**

United States Court of Appeals,
Ninth Circuit.

Nov. 9, 1970.

O. J. Wilkinson, Jr. (argued), Phoenix, Ariz., for defendant-appellant.

Morton Sitver (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and SWEIGERT, District Judge.*

SWEIGERT, District Judge:

On this appeal from a judgment of conviction of violation of Title 21 U.S.C. § 174 (receiving, concealing and transportation of heroin) after a guilty verdict by a jury, appellant raises three issues.

(1) Whether the arrest of appellant without an arrest warrant was upon probable cause.

(2) Whether certain items of evidence seized at the time of the arrest without a search warrant and introduced in evidence at the trial, were legally seized.

(3) Whether appellant's motion for a mistrial should have been granted.

The facts concerning the arrest and seizures, as shown by the record on the motion to suppress, are substantially as follows:

Special Agent Fluhr, Federal Bureau of Narcotics, testified that on September 19, 1969, at 9:30 a. m., a certain informant, with whom the agent had no prior dealing, placed a phone call from the agent's Phoenix office to Nogales, State of Sonora, Mexico; that the agent overheard this phone call; that the informant spoke to an individual by the name of Hector Ambriz and asked Ambriz to send to Phoenix a quantity of heroin and was told by Ambriz that the heroin would be arriving that day, late that evening, and that the informant would know the courier who would bring it; that about 12:15 a. m., September 20th, the informant phoned the agent to the effect that the informant had received a phone call from a person, known to the informant as a "banker" and described by the informer as a Mexican, short and chubby, to the effect that the person was in Phoenix at the Westernaire Motel, Room 28, with the heroin.

The agent had knowledge that an Ambriz organization was a large distributor of heroin in Nogales, State of Sonora, Mexico and that Ambriz had couriers who made frequent trips to Arizona—one of them commonly called "the banker."

By 1 a. m., September 20th, the agent, acting with other agents of the Bureau, arrived at the Westernaire Motel, Phoenix, observed an automobile parked directly in front of Room 28 bearing Mexican State of Sonora license plates and then went to the motel manager who told the agent that Room 28 was registered to one Gilberto Jiminez-Badilla and that one outgoing phone call had been made by the occupant and two phone calls received.

The agent then proceeded to Room 28, knocked and the door was opened by a person who, according to the record, fit

* Honorable William T. Sweigert, United States District Judge, Northern District of California, sitting by designation.

the description given by the informant. Thereupon the agent arrested appellant, observing simultaneously a chair, about one arm length or a little bit over that, between one and two arm lengths from appellant, draped by a shirt from the pocket of which protruded a rubber contraceptive visible stuffed with powder. Believing the powder to be heroin, the arresting agent then seized the powder-stuffed rubber.

The record is further to the effect that one of the agents, who spoke Spanish, asked appellant if the heroin in the shirt pocket was his and appellant stated that it was and, speaking in Spanish, indicated that there was additional heroin in an alcove in the kitchen area. The arresting agent then proceeded to that area where he found in a wastebasket and seized eleven more rubber contraceptives containing heroin.

## THE ARREST—PROBABLE CAUSE

■ The government contends that this case falls squarely within the holding of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). This is not quite accurate because in *Draper*, the informer had been found reliable in previous dealings with the officers while in the present case the informer, although described by the agent as a "reliable informer," had no previous dealings with the agent from which his reliability could have been ascertained. A bare statement that an informer was reliable is insufficient. Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

It has been held, however, that, even when the agent has no basis in experience for confidence in the informer, probable cause may otherwise be shown, e. g., when the informer's story includes the underlying facts and circumstances from which the informant drew his conclusions concerning the subject's criminal conduct *and* the agent then sufficiently verifies enough of them to justify his confidence in the informer. Gil-

bert v. United States, 366 F.2d 923, 931 (9th Cir. 1966); United States v. Chin Dan Fook, 413 F.2d 1016 (2d Cir. 1969).

■ If these elements can be found in the present case and considered as substitutes for the lacking element of a previously tested informer, the case would not be unlike *Draper*. In *Draper*, probable cause was found when a reliable informer's otherwise hearsay story of heroin possession by the subject was corroborated only by the circumstance that the subject, matching the informer's description, was recognized by the agent at the time and place predicted by the informer.

In the recent case of United States v. Mitchell, 425 F.2d 1353 (8th Cir. 1970), (Blackmun, J.) the court, upon careful consideration, held that, notwithstanding *Aguilar* and *Spinelli*, *Draper* is still good law for pre-arrest facts which parallel that case.

In the present case the informer's story does include, as required by both *Aguilar* and *Spinelli*, certain underlying facts and circumstances from which the informer drew his conclusion that the occupant of Room 28, Westernaire Motel, would have heroin in his possession—first, the informer's claimed phone conversation with the Nogales seller who was to send the heroin to him at Phoenix by courier; second, the informer's claimed receipt of a subsequent phone call from the courier concerning the latter's arrival at the Phoenix Westernaire Motel, Room 28, with the heroin; also the informer's claimed acquaintance with and his description of the courier.

The question remains whether the agent sufficiently verified enough of these claimed underlying facts and circumstances, as related by the informant, to justify reliance by the agent upon the informer's conclusion that the courier would have heroin in his possession.

The agent did verify the informer's claim of ordering by telephone a delivery of heroin from Nogales, State of Sonora, Mexico, to arrive in Phoenix by

courier. According to the record the agent actually "overheard" that call.

To overhear a phone conversation literally suggests that both sides of the conversation were heard, for example, by listening in. If such was the fact in the present case, then, certainly one basic underlying circumstance in the informer's story must be held to have been well verified.

Even if we regard the record as unclear on this point and assume that the agent heard only the informer's side of the phone conversation, we are of the opinion that verification to that extent, considered with other elements of verification here present, would justify the agent's reliance on the informer's conclusion that a courier would be delivering heroin to Phoenix.

It is possible that an agent could be tricked by an informer's fabrication or misrepresentation of the other end of a phone conversation. However, the record here is such that we should not make such an assumption. The phone call here seems to have been deliberately placed from the office of an experienced agent in his immediate presence and hearing.

The record also shows a further element of verification—verification of the informer's claim that he received a phone call from the courier on the latter's arrival at Phoenix. Before making the arrest the agent observed a car bearing Sonora, Mexico, license plates parked right outside Room 28 and, checking with the motel manager, found that the occupant, a person of Spanish name, had registered there and that at least one outgoing phone call had been made from the room.

Considered along with the further observation and knowledge of the agent before making the arrest—his observation of the occupant whose description as given by the informer, according to the record, fit this appellant, and the agent's knowledge of the Ambriz organization and its courier "the banker"—we are of the opinion that the informer's story was sufficiently verified by the agent to justify his conclusion of probable cause for the arrest of the occupant of Room 28—the appellant here.

## THE SEIZURES

■ Holding, as we do, that the arrest was upon probable cause and, therefore, valid, the only further question is whether the two seizures incidental to the arrest—(1) the seizure of the powder stuffed rubber protruding from the shirt, and (2) the seizure of the additional eleven rubbers from the wastebacket in the kitchen area alcove—were unreasonable under the circumstances.

Appellant contends that they were unreasonable within the meaning of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

As to the first item, the record is to the effect that its seizure required no search; that it was in the plain view of an officer who had the right to be in the position from which the view was made; that it was in the immediate presence of appellant; that it reasonably appeared to contain contraband narcotics.

In United States v. Avey, 428 F.2d 1159, 1164 (9th Cir. 1970), this court had occasion to quote from Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 19 L.Ed.2d 1067 (1968), after considering it in the light of Chimel:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

Under the circumstances we are of the opinion that the seizure of the contraband was not unreasonable within the meaning of Chimel.

■ As to the second item, we are of the opinion that, although its seizure would have been unreasonable within the meaning of Chimel if it had been the result of an unconsented search, the

seizure in this case was the result, not of any such search, but of volunteered information from the appellant to the effect that there was additional heroin in the kitchen alcove area.

According to the record defendant conceded that he had previously been properly advised in Spanish by Agent Jordan of his constitutional rights, and had understood them. Having, nevertheless, volunteered information concerning the location of this additional heroin, appellant must be deemed to have waived his right to have remained silent and to have in effect consented to any search and the ultimate seizure.

## MOTION FOR MISTRIAL

▇▇▇ The record shows that prior to trial the court had suppressed, upon the teaching of *Chimel*, the seizure of a National Bank of Mexico money bag which Agent Fluhr found in the motel room in a drawer of the desk part of a dresser desk just as the agents were about to leave the room after the arrest of appellant and after the seizure of the other two items already above discussed.

At appellant's trial one of the arresting agents, Jordan, when asked by the government on direct examination concerning what he had done with the eleven heroin rubbers found in the kitchen alcove area answered: "Well, I retained custody, and subsequently that bank— that bag with writing on it, 'Bank of Mexico,' was found and if I recall correctly I put it all in there and wrapped it up."

Defendant thereupon moved for a mistrial which motion was denied. The court, however, immediately warned the jury to disregard the reference to the money bag.

Defendant contends that the mistrial should have been granted; that when constitutionally unusable evidence is admitted in evidence against a defendant, such admission may be deemed harmless only when it can be said that there

is no reasonable possibility that the illegally admitted evidence did not overcome in the mind of the dullest juror a doubt which that mind might have conceived to be reasonable (citing Dean v. Hocker, 409 F.2d 319 (9th Cir. 1969), meaning that, before constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In the present case, however, the evidence in question was *not* admitted in evidence (as was the case in Dean v. Hocker, *supra*). On the contrary, the court admonished the jury to disregard it and in effect the evidence was stricken.

The general rule is that when evidence comes erroneously into the trial, such error usually may be cured by such a warning to the jury—unless the impression created upon the jury thereby is so strong as to have prejudiced the defendant. Maestas v. United States, 341 F. 2d 493 (10th Cir. 1965).

After examination of the trial record as a whole, we are of the opinion that there is no reasonable possibility that any such impression was created in this case.

The questioned reference, volunteered by a witness in answer to a proper government question directed to another item, was brief, incidental, and the jury was promptly told to disregard it. It was the only reference made during the trial to a Bank of Mexico bag.

Appellant's contention that the reference may have been the basis for the jury's implied finding that the heroin in question had been imported into the United States, and that defendant knew of such transportation, within the meaning of Title 21 U.S.C. § 174, is not persuasive.

Appellant's asserted defense in the present case was that, although he had indeed brought the heroin in question

from Nogales, Arizona to Phoenix, having previously crossed the border from Nogales, Sonora, Mexico, he did not know at the time it was heroin—a story obviously disbelieved by the jury.

In the course of his testimony appellant related that he had been employed as assistant cashier by a bank in Nogales for eight years, right up to the time of his arrest—a circumstance that would render rather innocuous any reference to appellant's possession of a bank bag.

For the foregoing reasons, the judgment of the trial court is affirmed.