Verlon **MUSGROVE**, Appellant,

v.

**Frank A. EYMAN, Superintendent, Arizona State Penitentiary, Appellee.**

No. 23953.

United States Court of Appeals, Ninth Circuit.

Jan. 5, 1971.

---

H. Earl Rogge, Jr., W. Edward Morgan, Tucson, Ariz., for appellant.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, Ariz., for appellee.

Before MERRILL, BROWNING and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was indicted, tried and convicted in the Arizona state court of the crime of buying and receiving stolen property of a value in excess of $50.00. After exhausting his remedies in the state courts, he filed this habeas corpus proceeding in the district court. After a full evidentiary hearing, his petition was denied. He appeals. We affirm.

*Factual Background*

The following is a fair summary of the state's evidence and the findings of the district court, as supported by the record. In the early morning of September 5, 1964, Tucson city police received a report of a liquor store burglary. Within fifteen or twenty minutes after receiving the report, police apprehended Ronald Slay and another suspect a short distance from the burglarized store, but found no liquor in their possession. The officer who subsequently arrested appellant arrived approximately an hour and a half after Slay and his companion had been taken into custody. During a briefing, the officer learned that Slay had been involved in a different liquor store burglary earlier in the evening and that he had been specifically identified as a participant in the second burglary. Accordingly, the officer commenced questioning Slay, who in turn readily admitted the robberies. The large quantity of liquor involved, valued at the trial in excess of $300.00, caused the officer to be curious about how it was disposed of within such a short period of time. Slay said appellant was the purchaser of the stolen liquor. He related how he, Slay, had stolen liquor twice the same night and sold both loads to appellant. He also gave details of a then unsolved burglary in which considerable liquor had been stolen. The details of the unsolved

burglary given to the officer by Slay corresponded with the information already known to the officer. Slay then described the automobile which had been used to transfer the first load and told the officer that the auto could be found at appellant's apartment.

The arresting officer and others accompanied Slay to appellant's apartment where Slay pointed out the automobile employed to haul the first load of stolen liquor. The automobile matched Slay's previous description. While the apartment was under observation, a person entered the automobile and left the scene. The light was not good, but Slay said that the automobile was driven either by the appellant or by a man named Twitty. When the automobile was stopped, Twitty was in fact the driver. This incident occurred before appellant's arrest.

Shortly thereafter, the arresting officer consulted with superior officers and made a tentative determination to arrest appellant. Slay accompanied the officer to the door of the apartment. When the appellant appeared at the door, the officer identified himself and asked Slay if appellant was the man to whom the stolen liquor had been sold. Slay replied in the affirmative. Appellant was then placed under arrest. Upon making the arrest, the officer observed from the doorway several boxes of liquor. Appellant, at the time, was the known operator of at least two night clubs and an "after hours club".

At the hearing, the evidence established that Slay had made two separate deliveries of stolen liquor to appellant, each consisting of at least three or four boxes.

### Issues

Appellant presents for our consideration three assignments of error and contends: (1) that appellant's arrest was illegal; (2) that the warrantless search of appellant's apartment was wrongful and that the evidence obtained in the search should have been suppressed; and (3) that appellant was deprived of a fair trial by reason of incompetency of counsel.

### Arrest without Warrant

The Arizona law permits a peace officer to make an arrest without a warrant under the circumstances mentioned in the footnote.[1] Under this type of statute an arrest without a warrant is valid if the arresting officer has probable cause to believe that the suspect has committed or is committing a felony. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Notwithstanding Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *Draper* is still viable on its own facts. United States v. Jiminez-Badilla, 434 F.2d 170 (9th Cir. 1970).

Relying primarily upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and like cases, appellant argues that Slay, though an admitted participant in the crimes, was an informer of untested reliability, and, therefore, the police had no probable cause for appellant's arrest. Moreover, erroneously relying upon James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed. 2d 30 (1965), he says that Slay's arrest in the neighborhood of the appellant's residence did not in itself furnish reasonable grounds to believe that appellant was involved in the crime. Additionally, he urges that since the police did not know the value of the liquor at the time of his arrest, there was no probable cause to believe that he had necessarily committed a felony.[2]

---

1. "When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it." Ariz. Rev.Stat. § 13–1403, subsec. 4.

2. Under Arizona law, the crime of receiving stolen property is a felony only if the value of the property exceeds $50.00. Ariz.Rev.Stat. § 13–621, subsec. A.

We must keep in mind that Slay was not an "informer" in the ordinary sense of the word, i. e. one whose information serves not only to point the finger, but also, and importantly, to establish that a crime is being, or is about to be, committed. Here, the officers, from an independent source, knew that a crime had been committed. Slay was an eye-witness and a confessed participant. He gave the officers reliable information on the automobile which transferred the stolen goods. He directed the officers to appellant's home and forthwith identified him. The details of the unsolved burglary given by Slay corresponded with the information already known to the officers. He was present in the immediate area of the crime and his information explained the disappearance of the large quantity of liquor in such a short period of time.

■ Ordinarily, it is true, probable cause to arrest may not be derived solely from the information supplied by an accuser not known to be reliable. Wong Sun v. United States, *supra*. Probable cause may be shown, however, if the information includes the underlying facts and circumstances from which he concluded that criminal conduct was afoot and the officer then independently verifies enough of these details to justify his confidence in the informer's reliability Gilbert v. United States, 366 F.2d 923, 931 (9th Cir. 1966); United States v. Chin Dan Fook, 413 F.2d 1016 (2d Cir. 1969); United States v. Jiminez-Badilla, *supra*. We believe that this was the situation in the instant case. Slay's almost immediate and spontaneous admission of his own guilt certainly lent credence to his statements regarding his cohort, and the entire police follow-up supported his accusation that appellant was implicated. Louie v. United States, 426 F.2d 1398 (9th Cir. 1970).

Wong Sun v. United States, *supra*, and Pulido v. United States, 425 F.2d 1391 (9th Cir. 1970), are not controlling on our particular facts. In both cases, the untested informer was a narcotics of-

fender, and thus a "notoriously unreliable source." Louie v. United States, *supra*, 426 F.2d at 1401. The same can be said of Castillon v. United States, 298 F.2d 256 (9th Cir. 1962). Here, however, Slay was not arrested for a narcotics violation, and moreover there was verification of the details of his story sufficient to establish his credibility under *Gilbert*.

We agree with the lower court that there was not rational basis on which the state court jury could have found that the stolen liquor, having a total minimum wholesale value of $300.00, could in any way have been divided into two deliveries each having a value of less than $50.00.

From all of the foregoing, we conclude that there was probable cause for the arrest.

*The Search and Seizure*

Having concluded that the arrest was upon probable cause, we have no difficulty in holding that the subsequent search and the seizure were valid.

■■ First of all, the record supports the finding of the trial judge that at the time of making the arrest the officer observed from the doorway several boxes of liquor. Inasmuch as the liquor was in plain view of the officer who had a right to be in the position from which the view was made, no search was actually required. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. United States v. Avey, 428 F.2d 1159, 1164 (9th Cir. 1970); Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■■ Even if we construe the record to involve a search, it was incidental to a lawful arrest and consequently valid. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969). Any reliance on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d

685 (1969), is misplaced. The incident in question occurred in 1964, and *Chimel* is not retroactive. Williams v. United States, 418 F.2d 159, 162 (9th Cir. 1969), cert. granted 397 U.S. 986, 90 S.Ct. 1120, 25 L.Ed.2d 394 (1970); United States v. De La Cruz Bellinger, 422 F.2d 723, 726 (9th Cir. 1970), cert. denied 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); Porter v. Ashmore, 421 F.2d 1186, 1189 (4th Cir. 1970).

### Incompetency of Counsel

Finally, appellant charges that his attorney, at the state court level, was incompetent. To prevail, appellant must show that the attorney was " * * * so incompetent as to make the trial 'a farce or a mockery of justice', a representation so ineffective as to be 'shocking to the conscience of the Court.' " Kruchten v. Eyman, 406 F.2d 304, 312 (9th Cir. 1969).

On this issue, the district court closely examined the appellant and weighed his testimony against that of the attorney who represented the appellant in the trial. He weighed the credibility of the one witness against the other and concluded there was no merit in appellant's contention. The court's finding that appellant was adequately represented is fully supported by the record.

Affirmed.