STATE of Iowa, Appellee,

v.

James Ray PETERSON, Appellant.

No. 53922.

Supreme Court of Iowa.

Sept. 9, 1971.

Hanson & Bormann, Emmetsburg, for appellant.

Richard C. Turner, Atty. Gen., Max A. Gors, Asst. Atty. Gen., and Charles H. Barlow, Sp. Palo Alto Pros. Atty., for appellee.

STUART, Justice.

The Palo Alto county grand jury returned an indictment charging James Ray Peterson with breaking and entering with intent to commit larceny contrary to section 708.8, The Code, 1966. Following a plea of not guilty, the matter proceeded to trial by jury which returned a verdict of guilty. Defendant's motion for new trial and judgment notwithstanding the verdict (perhaps intended as a motion in arrest of judgment section 788.1) being overruled, he was sentenced to the men's reformatory at Anamosa for a term not to exceed 10 years.

From this final judgment defendant appeals contending the court erred in failing to sustain: (1) his motion to dismiss the charge for lack of speedy trial; (2) his motion for mistrial; and (3) his objection to the introduction into evidence of a weapon.

The indictment was returned September 30, 1968 as the result of a break-in at an Emmetsburg supermarket. About 5 a. m. September 7 as the meat cutter entered the market to report for work he heard a pounding noise coming from one of the back rooms and noticed the safe was gone. The butcher immediately went to a filling station across the street and caused the matter to be reported to the police. Two police officers arrived at the supermarket within a very few minutes. As they were surveying the area three individuals fled from the store's rear entrance, two escaped under police gun fire in a 1960 Chevrolet. The third man, Peterson, attempted to elude the police by hiding under a gas truck parked at a garage across the street from the supermarket. He was discovered almost immediately, arrested and placed in the police car. Later that morning he was charged by preliminary information with the crime mentioned.

A service station operator who lived nearby was awakened by the officers' gunshots. He telephoned the police and was advised there had been a break in at the supermarket and was asked to go to the area and help, which he did. Later in the morning, within an hour of the time of hearing the shots, this witness returned to the scene and found a loaded revolver with the hammer cocked on the undercarriage of the gas truck mentioned.

■ I. Defendant contends the court erred in failing to dismiss the charge against him for lack of a speedy trial.

Defendant was arraigned and entered a plea of not guilty October 3. October 28 he filed motion for production and inspection and reproduction of reports, pictures and all matters of evidence material to the law suit; a motion to suppress evidence, alleged admissions and confessions and to disclose all exculpatory evidence. October 30 defendant filed motion in limine. The same day defendant filed a motion to order the State's witnesses to talk and cooperate with defendant's counsel. November 21, defendant filed application and authorization for expert witnesses. At the same time, by a separate instrument, he filed demand for speedy trial under section 795.2. The transcript reveals a copy of the demand was mailed to the county attorney.

July 3, 1969 the court entered its order for authorization for expert witnesses on defendant's behalf. July 9, the court sustained defendant's motion in limine. All other rulings by the court in regard to the above motions were entered July 10.

In the meantime, defendant made no effort to obtain a ruling on his demand for speedy trial by calling the matter to the court's attention or go on record in resisting the delay. The court in an order entered July 18 stated that it had been brought to its attention this cause was ready for trial. The matter was set for 10 a. m. August 13 and a jury panel ordered.

August 13 defendant moved to dismiss the charge for lack of speedy trial. The

motion was overruled and the matter proceeded to trial.

Defendant's motion is based on Code section 795.2. This section as amended by Regular session, Sixty-second General Assembly, chapter 400, section 259 and in effect at the time material here provided:

"If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown. An accused not admitted to bail and unrepresented by legal counsel, shall not be deemed to have waived his privilege of dismissal to be held to make demand or request to enforce a guarantee of speedy trial, and the court on its own motion shall carry out the provisions of this section as to dismissal."

This section was later amended by the Second session, Sixty-third General Assembly, chapter 1283, section 1 by deleting the words "to be held" and inserting in lieu thereof the words "or be held", a change not of material significance here.

Peterson was at all times represented by counsel and the exception in the statute therefore has no application.

Of course, defendant was not brought to trial within 60 days from the return of the indictment. Therefore, he is entitled to a dismissal under the cited section unless he has waived his right to a speedy trial or unless good cause for postponing the trial beyond that time is shown.

In the colloquy between court and counsel at the August 13 hearing both sides conceded no one ever called to the court's attention defendant's demand for speedy trial. It was also developed the final reply to the motions involved was filed April 30, 1969; one continuance from December 21 to January 30 was granted defendant because of inability to have witnesses he desired present; because counsel on both sides were engaged in tax work further

continuances were granted both parties for time to file briefs in support of their positions in respect to various motions. In addition the courtroom in the courthouse was being remodeled "all winter long". Hearings on the various motions had been conducted in the supervisor's office. Defendant's motion to dismiss was overruled.

In connection with this assignment defendant requests we reconsider the rule announced in State v. Allnutt, 261 Iowa 910, 156 N.W.2d 274. In the cited case the motion was submitted for the first time immediately prior to the commencement of trial. A copy had been delivered to the county attorney approximately 30 minutes before. We held the motion was too late.

There is another Allnutt case decided the same day, 261 Iowa 897, 156 N.W.2d 266. It is referred to in the briefs and arguments as the first Allnutt case. There the request for a speedy trial was made at arraignment but the motion for dismissal was not made until after trial and after return of the verdict. We held the motion was too late.

In the first Allnutt case, 261 Iowa at 901, 156 N.W.2d at 268, after discussing the purpose of the constitutional and statutory protection guaranteed defendant for a speedy trial, we said, 'It has long been held, both in this state and elsewhere, that a defendant, unless he is neither admitted to bail nor represented by counsel, may waive the constitutional and statutory provisions assuring him a speedy trial. * * (Citing authorities)"

In both cases we held defendant had waived his right to a speedy trial under section 795.2 by his delay in failing to move for a dismissal.

Defendant has not persuaded us we should depart from the pronouncements made in these cases.

We point out again defendant's demand for speedy trial was filed November 21. He did nothing to call his case on for trial

thereafter. He made no objections to the delays and failed to seek the aid of the court in enforcing his right until August 13, the day set for commencement of trial.

Although the record does not disclose when counsel was appointed for defendant, the clerk's transcript reveals defendant filed application for appointment of counsel and affidavit of financial condition October 3, 1968. The motion for production, inspection and reproduction of reports previously mentioned as filed October 28 was signed by defendant's present counsel. It is obvious defendant had the assistance of counsel from at least that date to the submission of the appeal.

Nowhere in the record are we told whether Peterson was incarcerated from the time of his arrest until August 13 but in the affidavit for appointment of counsel referred to defendant stated he was free on bond furnished by friends and relatives. This is not important in view of this wording of the statute, "an accused not admitted to bail and unrepresented by legal counsel." In State v. Johnson (Iowa, 1969), 167 N.W. 2d 696, 700, in interpreting section 795.1, Failure to Indict, we declined to change the "and" in that statute to mean "or". There is no logical reason why the similar language in 795.2 should be differently interpreted. We further held in the Johnson case that " * * * if a defendant is represented by counsel he must make a request or demand to enforce guarantee to speedy indictment or he shall be deemed to have waived such right".

In Parrott v. Haugh (Iowa, 1968), 158 N.W.2d 766, 769, this court held the necessity of demand for trial under section 795.2 as amended is obviated only if the accused has not been admitted to bail *and* is unrepresented by counsel.

The reasons for the rule are well stated in State v. McTague, 173 Minn. 153, 216 N.W. 787, 788. There is also an exhaustive annotation on waiver or loss of accused's

right to speedy trial in 57 A.L.R.2d 302, particularly at 308, 326, 336, citing the authorities of many jurisdictions adopting a similar principle. Additional authorities may be found in the Later Case Service to this annotation.

We adhere to the view a defendant represented by counsel waives his right to speedy trial under the constitution and the statutes in aid thereof if he does not resist postponement or move to bring his case on for trial.

Defendant's constitutional and statutory right to a speedy trial was not denied under the circumstances presented by this record or otherwise violated.

■ II. The trial court's ruling which sustained defendant's motion in limine instructed the county attorney and the state's witnesses that no one should testify to or mention the fact defendant, at any time after his arrest until time of trial, refused to answer questions or talk to the officers in regard to the charges against him.

In the course of the direct examination of Chief of Police Brennan this record was made:

"Q. When you saw the defendant early that morning in the police car, did you more or less take charge of him from then on out? A. Yes, I did.

"Q. Give—did you give him any constitutional warning? A. Yes.

"Q. Did you give to him what we refer to as the Miranda warning? A. That is correct, I read them to him.

"Q. Did he make any indication he understood them? A. He said he did understand them. I read them to him twice.

"Q. Did the defendant say where he had been? A. He said he had come from Spencer.

"Q. And did he say whether or not he knew anything about the other two subjects? A. *He wouldn't answer me.* (Emphasis supplied)

"Mr. Bormann: I am going to object to that and ask that it be stricken from the record under a previous motion made by the defendant, your Honor.

"The Court: It may go out.

"Mr. Bormann: Your Honor, I would also like to make a record of this."

At this stage of the trial the jury was excused and defendant's counsel moved for a mistrial pointing out he had, prior to trial, made a motion in limine for the State to advise their witnesses they should not testify to any comments made by defendant or to any fact bearing on defendant's exercise of his constitutional right to remain silent.

Defendant maintained he had been prejudiced to the point the matter could not be properly covered by the court's instruction since Brennan's answer made it appear to the jury defendant was at the time involved with two other people and defendant had refused to tell the police where they had gone. He insists he was severely prejudiced by exercising his constitutional right to remain silent.

During the discussion had in court chambers on defendant's motion, the county attorney said he was somewhat surprised by Brennan's answer to the question propounded. He called attention to the minutes of Brennan's testimony before the grand jury where this witness testified, "I repeated the warnings again, asked him if he understood them and he said he did and said he would talk to me. I asked him where the other two persons were and he said, 'I don't know, I just came from Spencer'." The county attorney said his questions to Brennan were based on this witness's testimony before the grand jury. He argued the matter could be clarified upon further direct examination.

After further discussion, the jury was recalled and the court overruled defendant's motion for a mistrial. Brennan was recalled as a witness and this record made:

"Q. Officer Brennan, did the defendant say whether or not he knew anything about the other subjects? A. Yes, he did.

"Q. And what was that? A. I asked him where the other two subjects were and he said, 'I don't know, I just came from Spencer'."

After further questioning along a line not relevant to this issue the witness was excused and the State rested.

Defendant relies on this statement appearing as n. 37 in Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694, 10 A.L.R.3d 974:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. Cf. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); * * *."

We need not decide whether this interrogation at such an early stage of the investigation came within the Miranda restrictions nor, as urged by the state, whether the question relating to defendant's knowledge of the two other subjects was within the limitations of the trial court's ruling relating to "charges against" Peterson. Conceding for the purposes of this opinion the court's ruling on the motion in limine was correct and that the answer of the witness violated it we do not believe defendant is entitled to a reversal.

It is important to categorize the situation presented to us on appeal. We do not consider this a case for the application of

the harmless error rule announced by the United States Supreme Court in Chapman v. California (1967), 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711, and applied in Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Here no constitutionally inadmissible evidence was submitted for the jury's consideration. The trial court did not make any erroneous rulings on the evidence adverse to defendant. The answer complained of was stricken immediately. After defendant's motion for mistrial was denied, the witness returned to the stand and answered the identical question by quoting defendant's reply. Therefore, the only testimony in the record is that defendant did not stand mute, but answered the officer's question.

A reversal must be predicated upon the proposition that the first answer, forbidden by the ruling on the motion in limine, was so prejudicial, its effect upon the jury could not be erased by this procedure and defendant was denied a fair trial. Ordinarily the striking of improper testimony cures any error. State v. Carey (Iowa, 1969), 165 N.W.2d 27, 32. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a reversal. State v. Johnson (Iowa, 1971), 183 N.W.2d 194, 198; State v. Coffee (Iowa, 1970), 182 N.W.2d 390, 392. State v. Heisdorffer (Iowa, 1969), 164 N.W.2d 173, 176; State v. Olson (1958), 249 Iowa 536, 554, 86 N.W.2d 214, 225. We do not believe this is such a case.

There was no necessary connection between the question and defendant's involvement in the crime under investigation. The incident was not stressed by the state. It was not the kind of response which would likely incite the jury to prejudice against defendant. We can perceive of no reason why the procedure followed in this instance was not sufficient to cure any error inherent in the first answer given by the witness.

Bruton v. United States (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484, while holding the adverse effect of the admission of a co-defendant's confession could not be cured by an instruction limiting its evidentiary application to the confessor, stated:

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' (Citing cases)"

See also State v. Mercer (1967), 261 Iowa 371, 374, 154 N.W.2d 140, 142; State v. Haffa (1955), 246 Iowa 1275, 1286, 71 N.W.2d 35, 42, cert. den. 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801.

The Ninth Circuit encountered a similar problem in United States v. Jiminez-Badilla (CA9, 1970), 434 F.2d 170. There a bank money bag was suppressed as evidence under Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. An agent who was testifying for the government made reference to the money bag found during the search. Defendant's motion for mistrial was denied. Defendant contended error in admitting evidence in violation of defendant's rights can be held harmless only when the court can declare a belief that it was harmless beyond a reasonable doubt. Citing Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The court said:

"In the present case, however, the evidence in question was *not* admitted in evidence. On the contrary, the court admonished the jury to disregard it and in effect the evidence was stricken.

"The general rule is that when evidence comes erroneously into the trial, such error usually may be cured by such warning to the jury—unless the impression created upon the jury thereby is so strong as to have prejudiced the defendant. Maestas v. United States, 341 F.2d 493 (10th Cir. 1965)."

In United States v. Kershner (CA5, 1970), 432 F.2d 1066, 1071–1072, co-defendant, Smith, moved for a mistrial because the "government's witness, Long, after being cautioned only to testify with regard to what Kershner admitted he himself had done and having been questioned only as to Kershner's statements as to his own activity, blurted out, 'He [Kershner] said Smith almost killed a man.' The trial judge immediately ruled this voluntary interjection inadmissible hearsay and then and there gave a specific instruction to the jury to disregard the statement entirely."

The Court of Appeals set out the above quote from Bruton and then stated: "We regard Long's voluntary retort as an example of the very type of inadvertence to which the Court referred."

Innumerable federal cases apply the general rule stated in United States v. Jiminez-Badilla, supra. Some of the more recent decisions are: Russell v. United States (CA5, 1970), 429 F.2d 237, 239; United States v. Pollack (CA5, 1970), 427 F.2d 1168, 1170; United States v. Clayton (CA 6, 1969), 418 F.2d 1274, 1276; United States v. Pritchard (CA5, 1969), 417 F.2d 327, 328; Jordan v. United States (CA9, 1969), 416 F.2d 338, 344; Nash v. United States (CA8, 1969), 405 F.2d 1047, 1053; United States v. Lipowitz (CA3, 1968), 401 F.2d 591, 592–593; McWilliams v. United States (CA8, 1968), 394 F.2d 41, 47.

However, even if we were to apply the Chapman v. California, supra, rule of harmless error, we believe stating of the answer here in violation of the motion in limine was harmless beyond a reasonable doubt. Testimony that defendant refused to answer this particular question was of such little significance under all the circumstances that it is highly unlikely to have been a determining factor in the decision of the jury. See United States v. Nasse (CA7, 1970), 432 F.2d 1293, 1303; United States v. Clayton, supra; Jordan v. United States, supra; United States v. Lipowitz, supra.

Error, if any, was cured by the procedure followed in the instant case and was harmless. Defendant is not entitled to a reversal based thereon.

■ III. Defendant contended it was reversible error to receive the weapon found on the undercarriage of the truck in evidence "when (1) the weapon was never identified as belonging to the defendant, (2) there was no testimony that defendant even had possession of this weapon or any other weapon, (3) there was no need to introduce this weapon into evidence because it was not connected to the crime (such as in armed robbery or carrying a concealed weapon) and there was no testimony connecting the defendant with this weapon".

This language in State v. LaMar (1967), 260 Iowa 957, 962–963, 151 N.W.2d 496, 499, is opposite in connection with defendant's contention:

"It was a necessary part of the State's case to prove beyond a reasonable doubt that defendant had broken into the restaurant with the intent to commit larceny. Intent to commit a public offense is vital under Code section 708.8. State v. Burns, 190 Iowa 6, 8, 179 N.W. 843, 844; 12 C.J.S. Burglary § 2. The availability to the accused of tools or instruments of a type that could be used as a means of committing larceny or as showing preparation for the commission thereof, found at the scene, properly identified, was admissible as bearing on that intent. As tending to support

this statement see State v. Harless, [249 Iowa 530, 534–535, 86 N.W.2d 210, 213]."

State v. Johnson (Iowa, 1968), 162 N.W. 2d 453, 456, has this statement:

" * * * It is not required that a weapon or other instrument be identified positively before its admission can be had. It is only necessary that it be found under circumstances affording a basis for a reasonable inference on a point in issue. * * [Citing authorities]."

In State v. Ford (1966), 259 Iowa 744, 749, 145 N.W.2d 638, 641, defendant was charged with breaking and entering with intent to commit larceny. He was discovered under a pool table in a tavern by two officers called to investigate the crime. Under the table near where the defendant was hiding one officer found a hammer and a gun. Defendant admitted owning the hammer but *denied* owning the gun. On appeal defendant's contention the trial court had erred in admitting the gun was rejected. We said:

" * * * Their identification as articles in defendant's possession at the time and place of the break-in, suitable and available for use in committing the crime, was sufficient to support their receipt in evidence."

It certainly can be said the gun was an article suitable for use in committing the crime of breaking and entering with intent to commit larceny and it was found under circumstances affording a basis for a reasonable inference it was available for defendant's use in connection with the crime charged. The court did not err.

As we find no reversible error, the case is affirmed.

Affirmed.

MOORE, C. J., and LeGRAND, REES and UHLENHOPP, JJ., concur.

MASON, RAWLINGS and BECKER, JJ., dissent.

REYNOLDSON, J., takes no part.

MASON, Justice (dissenting).

I respectfully dissent from Division II and would accordingly reverse.

There is no dispute that serious error, a violation of defendant's constitutional right to remain silent, arose during prosecution's direct examination of the arresting officer. While I am satisfied the prosecution did not purposely elicit the objectionable testimony, witness' response called the jury's attention to defendant's refusal to answer questions upon arrest.

Comment on defendant's silence trespasses the protective boundaries of Fifth Amendment and is, as the majority notes, clearly proscribed by Miranda v. Arizona.

Such comment has been qualitatively equated with impermissible comment on an accused's failure to testify.

In State v. Ford, 80 N.M. 649, 651, 459 P.2d 353, 355, the court, in reversing and granting a new trial because of the prosecution's reference in jury argument to defendant's failure to proclaim his innocence or protest it at the time of arrest, approved this language from Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586 (1968):

" 'In Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the Supreme Court hel dthat the Fifth Amendment forbids prosecutor and court from commenting on an accused's failure to testify on his own behalf. The distance between that issue and the prosecutor's comments here about the accused's failure to make an exculpatory statement upon arrest is infinitesimal. Indeed, in Miranda v. State of Arizona, the Supreme Court recognized the applicability of *Griffin* to this situation, when, at footnote 37, * * *

[setting out the statement previously quoted from this footnote]. Even where there is no interrogation and the accused merely remains silent, no weight whatever can be given to the accused's silence. We agree with the Second Circuit in United States v. Mullings, 364 F.2d 173, that "it is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested." ' "

State v. Bowman, 204 Kan. 234, 235–236, 461 P.2d 735, 736, related to admissibility of a detective's testimony that at the custodial inquisition defendant made no comment when confronted with the incriminating statement of an alleged accomplice. On appeal defendant contended the admission of the evidence violated his constitutional rights. In reversing and remanding for a new trial the court made use of this statement from State v. Dearman, 198 Kan. 44, 46, 422 P.2d 573, 575:

" 'Thus, when the appellant was placed under arrest by the officers in this case and said he wanted to see a lawyer, he was exercising a federal constitutional right. At this juncture he also had the constitutional right to remain silent.

" ' * * * A similar case was before the United States Court of Appeals, First Circuit, in Fagundes v. United States, 340 F.2d 673 (1965). There the court said:

" ' " * * * Thus when Fagundes said when he was arrested and handcuffed that he wanted to see a lawyer he was exercising a federal constitutional right. And certainly at that juncture he had the constitutional right to keep silent. * * * His assertion of one constitutional right, his right to counsel, and his reliance upon another constitutional right, his right to remain silent when charged with crime, we think cannot be used against him substantively as an admission of guilt, for to do so would be to render the constitutional rights mere empty formalities devoid of practical substance. * * * "

" 'We think the foregoing decision is persuasive and hold that evidence disclosing that one charged with crime has asserted his constitutional right to counsel, and his constitutional right to remain silent, cannot be used against him substantively as an admission of guilt.' "

The Kansas court then made reference to the footnote in Miranda v. Arizona which is quoted in Division II by the majority.

Although we have not had the occasion to consider the announcement of the court in the footnote to Miranda v. Arizona, "Since Griffin v. State of California (1964), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, we have held comments and instructions drawing inferences of guilt from defendant's failure to testify violate the Self-incrimination Clause of the Fifth Amendment, and constitute reversible error. * * [citing authorities]." State v. Kimball, 176 N.W.2d 864, 868, (Iowa 1970).

Borrowing from State v. Ford, 80 N.M. at 651, 459 P.2d at 355, the distance is infinitesimal between forbidding the prosecutor or the court from commenting on an accused's failure to testify on his own behalf and denying admissibility of the state's evidence the accused, while under arrest and in police custody after having been warned of his constitutional rights as enunciated in Miranda v. Arizona, exercises his right to remain silent. Silence of an accused may not be used directly or indirectly to aid the prosecution. State v. Osborne, 258 Iowa 390, 393, 139 N.W.2d 177, 179.

That the witness' testimony was substantially prejudicial to defendant is axiomatic. It constitutes an obvious comment on defendant's silence from which an inference of guilt may be drawn, and as held in State v. Kimball, supra, it constitutes reversible error. I perceive no significant difference, as concerns defendant's constitu-

tional rights, whether the forbidden comment comes from the court, the prosecuting attorney, or prosecution's witness. The prejudicial effect is evident in all instances.

The majority's denial of defendant's contention urged in this assignment of error is based on the premise "no constitutionally inadmissible evidence was submitted for the jury's consideration" and error, if any, was cured by the procedure followed by the trial court, referring to the court's ruling on defendant's counsel's motion to strike the witness' answer. Hence, there was no error at all.

I cannot agree. In the first place, comment on defendant's exercise of his constitutional right to remain silent is error. There was such comment here. In the second place, the error was not cured under the circumstances shown in this record. No admonition to disregard witness' statement was given to the jury, either at the moment of objection or in jury instructions. The incriminating statement was stricken from the record, but a residue of prejudice remained. The injustice of the improper testimony was not eliminated by later testimony given when the jury was recalled after hearing defendant's motion for mistrial.

The majority finds adequate cure provided by court's ruling, citing State v. Carey, 165 N.W.2d 27, (Iowa 1969), where the court observed that ordinarily, withdrawal of evidence from jury's consideration cures any error in the admission of improper evidence. Yet we went on to state: "However, we have held in a number of cases that the mere withdrawal of evidence does not always remove its prejudicial effect. In State v. Brundidge, 118 Iowa 92, 91 N.W. 920, 921, we said, 'It is true, also, as contended by the state, we have recognized the rule that, where incompetent evidence has been received, its subsequent withdrawal or exclusion by the trial court will ordinarily cure the error. It is,

however, a rule which may easily be abused, —especially in the trial of a criminal case— * * *.' " See also State v. Paden, 199 Iowa 383, 202 N.W. 105 and State. v. Tharp, 258 Iowa 224, 138 N.W.2d 78.

This court has recognized that prompt withdrawal of improper testimony, even with full admonition to disregard, may in certain circumstances be insufficient to erase prejudicial effect. See State v. Johnson, 183 N.W.2d 194, (Iowa 1971); State v. Coffee, 182 N.W.2d 390, (Iowa 1970); Castner v. Wright, 256 Iowa 638, 127 N.W. 2d 583.

In this instance a distinct, express withdrawal, accompanied by proper admonition to disregard, is absent. Attention is called to the fact neither the State nor the majority contended Brennan's statement, "He wouldn't answer me," was mere inadvertence.

The majority cites United States v. Jiminez-Badilla, 434 F.2d 170, (Cir. 9) and United States v. Kershner, 432 F.2d 1066, 1071–1072, (Cir. 5) as support for its position. However, in Jiminez-Badilla the court admonished the jury to disregard the objectionable testimony. In Kershner the statement was regarded as a type of inadvertence. Neither impress me as being support for the position asserted by the majority.

The counsel acted with commendable promptness in protecting defendant's constitutional rights. This is not a case where the defense attorney awaits the outcome of the trial and then complains but one in which counsel took precaution by motion in limine before trial in an effort to guard against just what happened here.

The majority further supports its position by observing no necessary connection between the question and defendant's involvement in the crime under investigation. This reasoning misconstrues the logic un-

derlying the protection of the right to remain silent.

The right to remain silent is intended to safeguard an accused from being compelled to incriminate himself. If comment on accused's silence were allowed, the resulting innuendo would be devastating, and the right to remain silent would be rendered nugatory. It makes no difference whether the question directed to accused patently connects him with the crime—comment on his refusal to answer must be categorically prohibited. It is the innuendo and insinuation resulting from comment on defendant's silence, which if unchecked may force self-incrimination, that is being avoided.

"* * * [A]ny such reference [to defendant's silence] violates the Fifth Amendment because 'It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.' * * *" State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518, 521, quoting Griffin v. State of California, supra.

Even if it were to be argued the trial court has a large measure of discretion in ruling on motions to strike testimony and admonishing the jury regarding the effect of testimony and that a manifest abuse must appear before we will interfere, I would hold there was such abuse of discretion here as to require reversal.

However, since this argument was not advanced I would hold Brennan's statement was a proscribed comment on defendant's exercise of his right to remain silent and the error arising from the comment was not cured by the court's procedure.

RAWLINGS and BECKER, JJ., join in this dissent.