UNITED STATES of America, Plaintiff-Appellee,

v.

Arthur Joseph AVEY, and Larry Richard Dean, Defendants-Appellants.

No. 24730.

United States Court of Appeals, Ninth Circuit.

June 10, 1970.

Rehearing Denied July 17, 1970.

**1160**

Thomas A. Zlaket (argued), of Estes, Browning, Maud & Zlaket, Tucson, Ariz., Joe M. Romley, of Leibsohn & Romley, Phoenix, Ariz., for appellants.

James Wilkes (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before JERTBERG, CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from appellants' convictions at jury trial on one count of knowingly concealing eighty pounds of marihuana after it had been imported into the United States contrary to law and with appellants' knowledge, in violation of 21 U.S.C. § 176a.

1. The immigration officers allegedly stopped the car because the driver, Avey, wore a mustache and cowboy hat and the vehicle was of a type commonly used by smugglers of aliens.

The relevant facts of the case are as follows: A United States Customs official testified at trial that at approximately 5:30 P.M. on February 23, 1969, appellants drove a 1955 station wagon across the Mexican-American border at Nogales, Arizona. He made a thorough search of the vehicle and discovered no contraband although he recognized the odor of marihuana in the vehicle. More than two hours later, appellants passed a checkpoint set up by two inspectors of the Immigration and Naturalization Service on the Nogales-Tucson highway some twelve miles north of Nogales. The officials testified that they stopped appellants' vehicle to search for aliens not lawfully admitted into the United States.[1] Shining a flashlight into the back of the station wagon, one inspector observed in plain sight several packages wrapped in red cellophane and protruding from under a canvas tarp. The inspector lifted the tarp and discovered more packages. Suspecting that the packages contained contraband, the inspectors radioed for a customs agent who arrived twenty minutes later and, breaking open one of the packages, identified the contents as marihuana and placed appellants under arrest.

Appellants were convicted after trial on May 28, 1969. We affirm.

### (1) *Self-incrimination*

Appellants first assert that their conviction should be reversed because legal possession of marihuana would require declaration and invoicing[2] and such acts would violate their constitutional privilege against self-incrimination. We have previously rejected this argument. United States v. Vansant, 423 F.2d 620 (9th Cir. 1970); Witt v. United States, 413 F.2d 303 (9th Cir.), cert. denied, 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969). See also

2. See, e. g., 26 U.S.C. §§ 4741, 4751–53, 4755.

Walden v. United States, 417 F.2d 698 (5th Cir. 1969). Moreover, the plea of self-incrimination addressed to Count II of the indictment filed under 26 U.S.C. 4744(a) was sustained by the District Judge during trial and Count II was dismissed. (R.T. p. 65). It is not properly in issue here.

### (2) *Validity of presumption*

Appellants next submit that the trial court committed reversible error by instructing the jury as follows:

"I instruct you that if from the evidence you find beyond a reasonable doubt that the Government's Exhibits 1 through 48 contain marihuana, and if you find beyond a reasonable doubt further that such marihuana was seized by Government officers within the State of Arizona, then from these findings you would be authorized to draw the inference and to find that the marihuana was imported into the United States of America contrary to law. Of course, as against that inference there is a possible contrary inference which you might draw; that is, that the marihuana was not imported contrary to law."

This instruction was authorized by 21 U.S.C. § 176a which reads in pertinent part:

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury." [3]

Such presumption or statutory inference was held constitutional by this court. Costello v. United States, 324 F.2d 260, 263–264 (1963), cert. denied, 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650 (1964); Caudillo v. United States, 253 F.2d 513, cert. denied *sub nom.* Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373 (1958). Nine days prior to appellants' trial, however, the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), held unconstitutional the portion of the § 176a presumption which authorizes the jury to infer from a defendant's possession of marihuana that the defendant knew of the unlawful importation. The Court specifically declined to decide the question of the validity of that part of the presumption which authorizes the jury to infer from a defendant's possession of marihuana that it was imported illegally. 395 U.S. at 37, 89 S.Ct. 1532. See also United States v. Vansant, *supra.* We reach this question and reaffirm our determination in *Costello* and *Caudillo* that this part of the presumption is constitutional.

In Tot v. United States, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943), the Supreme Court, drawing from Mobile, J. & K.C. R. R. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 55 L.Ed. 78 (1910), stated that "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." See also United States v. Romano, 382 U.S. 136, 139, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 66, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). In *Leary, supra,* the Court stated "that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36, 89 S.Ct. at 1548. Applying this "more likely than not" test, even assuming it to be stiffer than the

---

3. The court while correctly instructing the jury on the essential elements of the crime including the necessity of proof of knowledge of importation contrary to law, was careful not to give an instruction permitting a presumption of knowledge based upon possession.

Tot standard,[4] we hold that the presumption is valid.[5]

The District Judge here analyzed for the jury the essential elements of the offense charged in the indictment, "each of which the Government must prove beyond a reasonable doubt." (R.T. 153) First, that the marihuana was imported into the United States contrary to law; second, that the accused knowingly received or concealed or facilitated the transportation or concealment of the marihuana; and, third, that at the time the accused so received or concealed or facilitated the transportation or concealment of the marihuana, the accused then and there knew that the marihuana had been imported into the United States contrary to law.

The court then, again, told the jury that the Government must prove "each of these essential elements beyond a reasonable doubt." Finally, in instructing upon the inference of importation he was careful to qualify his statement by concluding at this point

"Of course, as against that inference [of illegal importation] there is a possible contrary inference which you might draw; that is, that the mari-

huana was not imported contrary to law." (R.T. p. 154).

With respect to this latter inference, there was no evidence offered to suggest that the contraband here was from any domestic source.

In *Leary, supra,* the Court held that a jury cannot infer a defendant's knowledge of importation of marihuana from possession. The Court said, "[I]t would be no more than speculation were we to say that even as much as a majority of possessors 'knew' the source of their marihuana." 395 U.S. at 53, 89 S.Ct. at 1557. The Court made it clear that this knowledge presumption was invalidated because of its speculative and subjective nature.[6] The importation presumption under consideration here, in contrast, rests upon the objective, convincing evidence that far more than half of the marihuana smoked in the United States —perhaps more than ninety percent—is illegally imported into the country. This evidence is detailed in *Leary, supra,* 395 U.S. at 39–43, 89 S.Ct. 1532.[7] The Court there summarized:

"[T]he materials which we have examined point quite strongly to the con-

---

4. "The *Leary* language represents some stiffening of the absolute minimum degree of rational connection which the Court has expressed as essential to the validity of a statutory criminal presumption." Note, 83 Harvard L.Rev. 103, 107 (1969).

5. We decline to decide whether this, or any other, presumption must be adjudged by "the more exacting reasonable-doubt standard normally applicable in criminal cases." Turner v. United States, 396 U.S. 398, 416, 90 S.Ct. 642, 652, 24 L.Ed. 2d 610 (1970). See also *Leary, supra,* 395 U.S. at 36 n. 64, 89 S.Ct. 1532; United States v. Adams, 293 F.Supp. 776, 783–784 (S.D.N.Y.1968); Note, 83 Harvard L.Rev. 103, 108–110 (1969). *Cf.* In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

6. "[O]ur *holding* that the § 176a 'knowledge' presumption is unconstitutional rests *entirely* upon a detailed inquiry into the available facts about the *state of mind* of marihuana users." (Emphasis supplied.)

* * * * *

"Even if we assume that the *previously* assembled data are sufficient to justify the inference of illegal importation, see *supra,* at 44, [89 S.Ct. 1532, 1552,] it by no means follows that a majority of marihuana possessors 'know' that their marihuana was illegally imported."

* * * * *

"The teachings of *Tot, Gainey* and *Romano* * * * require that it be determined with substantial assurance that at least a majority of marihuana possessors have learned of the foreign origin of their marihuana through one or more of the ways discussed above." 395 U.S. at 45 n.92, 46, 52, 89 S.Ct. at 1553–1557.

7. This evidence may be updated by the following information obtained on April 3, 1970 from John E. Ingersoll, Director, Bureau of Narcotics and Dangerous Drugs:

"A recent inquiry of our Regional Office in Mexico City concerning mari-

clusion that most domestically consumed marihuana is still of foreign origin. During the six years 1962–1967, some 79% of all marihuana seized by federal authorities was seized in attempted smuggling at ports and borders. The Government informs us that a considerable part of the internally seized marihuana bore indications of foreign origin. While it is possible that these facts reflect only the deployment of federal narcotics forces, rather than the actual proportion of imported to domestic marihuana, almost all of the authorities which we have consulted confirm that the preponderance of domestically consumed marihuana is grown in Mexico." 395 U.S. at 41–42, 89 S.Ct. at 1551. (Footnotes omitted.)

Thus, while a trier of fact more likely than not will be unable to adjudge the state of mind of a marihuana possessor to determine whether he knew the origin of his marihuana, the trier of fact can rely upon authoritative, empirical evidence that the origin of the marihuana was far more likely than not to have been foreign.[8]

Our result is in accord with that reached in United States v. Adams, 293 F.Supp. 776 (S.D.N.Y.1968), which, presaging *Leary*, declared unconstitutional the knowledge part of the presumption but upheld the importation part. The court said:

"The difficult question is whether importation should be inferable from possession alone. The less difficult question is whether possession alone should warrant an inference of *knowledge* of importation. This court has resolved grave doubts on the first question in favor of deferring to the always weighty judgment of the Congress." 293 F.Supp. at 784.

---

huana distribution systems reveals that the majority of Mexican marihuana emanates from independent operators from the growth areas primarily in the Mexican States of Sinaloa, Sonora, Chihuahua, Durango, Neuogleon, Michoacan, San Luis Potosi, Guerrero, Jalisco, Nayarit, and Baja California. The traffickers utilize male and female couriers, shipments of industrial products, shipments of consumer goods, loaded vehicles and private airplanes to smuggle the contraband into the United States. Recently, large numbers of Americans have proceeded to Mexico in order to obtain large quantities of marihuana for transportation back to the United States and the arrest of American suspects in Mexico has increased considerably.

"Perhaps as high as 90% of the marihuana seized by Federal authorities is either at the Mexican border or in States bordering Mexico. I must add, however, that the premise set forth in footnotes 89 and 90 of the *Leary* case, with respect to not finding sizeable quantities of domestically grown marihuana in our illicit traffic, may no longer be true. We have received reports that many of the California traffickers have sent persons to the Central States to acquire marihuana from wild growth. It is significant to note that during 1969, there were over 150 persons arrested in Kansas alone for harvesting marihuana, most of whom were not residents of that State.

"Although we have no precise computations as to what quantities are obtained from domestic growth, I am inclined to think that in view of recent trends we could not support the statement in the *Leary* case which concluded that 'Third and last, reports of the Bureau of Narcotics and testimony of its agents indicate that in its far-reaching investigations the Bureau has never encountered a system of distributing sizeable quantities of domestically grown marihuana.' "

8. The validity of the use of the presumption here draws strength from the geographical location as well as from the statistical information set out in *Leary*. If the principal areas of domestic growth are the central states such as Illinois and Minnesota, *Leary, supra*, 395 U.S. at 43 n. 86, 89 S.Ct. 1532, and Kansas, n. 7, *supra*, it is unlikely that this marihuana in an automobile traveling north away from the Mexican border and within twelve miles of it was hauling domestic marihuana. Moreover, the quantity consisting of forty-eight packages weighing approximately eighty pounds is still another buttress of proved fact to support presumed fact, as is the manner of packaging which was characteristic of marihuana brought in from Mexico. (R.T. p. 4, 36)

**1164**

The Supreme Court has likewise emphasized that "in the judicial assessment the congressional determination favoring the particular presumption must, of course, weigh heavily." *Leary, supra,* 395 U.S. at 36, 89 S.Ct. at 1549. See also United States v. Gainey, *supra,* 380 U.S. at 67, 85 S.Ct. 754.

### (3) *Cruel and unusual punishment*

■ Appellants contend that the statutory requirement of a mandatory minimum sentence of five years imprisonment imposed under 21 U.S.C. § 176a violates the Eighth Amendment's prohibition of cruel and unusual punishment in that the sentence holds no reasonable relationship to the severity of the crime or to other criminal penalties. This argument has been resolved against appellants in Bettis v. United States, 408 F.2d 563, 569–570 (9th Cir. 1969), which we decline to overrule.

### (4) *Search and seizure*

■■ Appellants next claim that the trial court erred in denying their motion to suppress the marihuana on the ground that it was the product of an unlawful, warrantless search. Authorized officers of the Immigration and Naturalization Service, such as those here, were empowered, without a warrant, to stop appellants and search their vehicle for smuggled aliens. 8 U.S.C. § 1357; United States v. Miranda, 426 F.2d 283 (9th Cir. 1970). In this instance the vehicle was a station wagon and a flashlight examination from the outside disclosed a large hump covered with a tarpaulin which was large enough to conceal a human being. (R.T. p. 41.) Upon discovery of what they believed to be contraband, they had sufficient probable cause to detain appellants pending the arrival of customs agents. The customs agents had probable cause to search appellants' vehicle, to seize the marihuana in plain sight and to arrest appellants without a warrant. See Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *Cf.* Chimel v. California, 395 U.S. 752, 764 n. 9, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1969). "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).

■ We have considered appellants' other contentions and find them without merit. The trial court did not abuse its discretion in refusing to grant appellants a continuance for the purpose of scrutinizing the opinion in Leary v. United States, *supra,* announced some nine days prior to the commencement of trial. Any error committed by the court in the admission or exclusion of evidence was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court did not err in refusing to direct a verdict of acquittal.

The judgment is affirmed.