**Eddie Willie TAYLOR, Petitioner-Appellant,**

v.

**The STATE OF ARIZONA, and Frank A. Eyman, Warden, Respondents-Appellees.**

**No. 71-1361.**

United States Court of Appeals, Ninth Circuit.

Oct. 6, 1972.

---

Gilbert W. Chester (argued), of Chester & Garrett, Michael E. Bradford, Phoenix, Ariz., for petitioner-appellant.

Thomas A. Jacobs, Asst. Atty. Gen. (argued), William P. Dixon, Asst. Atty. Gen., Gary K. Nelson, Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before HAMLIN, CARTER and CHOY, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Appellant, convicted of robbery by an Arizona court, appeals to this court from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241 after an evidentiary hearing.

The appeal raises the following questions:

(1) Was there probable cause to arrest appellant without a warrant at his apartment?

(2) Was evidence seized following the arrest admissible as incident to the arrest?

(3) Does the rule of Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967), allowing seizure of "mere evidence", have any impact on the case? We affirm.

### FACTS

The facts as found by the trial court were as follows: A service station in Phoenix, Arizona was robbed at gunpoint by two individuals on November 20, 1963, and the victim shot in the hand. One of the assailants fled on foot and the other in a car. On the arrival of the police, a small black straw hat was discovered at the service station. It belonged to no one at the station and had apparently been lost by one of the assailants.

One of the robbers was described to the police as being black, 6-foot, slim in build, and driving a 1957 Chevrolet bearing yellow, out-of-state license plates. The police also learned that a traffic police unit had stopped an automobile after the robbery which fitted the description both as to the vehicle

and the driver of the car, and that the driver's name was Eddie Willie Taylor, the appellant. His present address was on East Broadway in Phoenix, Arizona. The traffic unit had filled out a field interrogation card on Taylor because his conduct seemed too submissive, which made them suspicious.

The next day, on November 21, 1963, at approximately 10:30 p. m., two officers went to appellant's apartment without an arrest or search warrant. They knocked on the door, and when appellant came to the door, dressed in his underclothes, one of the officers had a drawn gun. They advised appellant that they were investigating an armed robbery and that he and his vehicle fit the description. They asked him to accompany them downtown. While they waited in the apartment for appellant to get dressed, one of the officers observed a small photograph lying on a table in the bedroom which portrayed appellant wearing a hat identical or very similar to the one found at the robbery scene. Over appellant's protest one of the officers took possession of the photograph. It was introduced at appellant's trial and was a critical piece of evidence in securing his conviction.

Appellant was tried and convicted in the Superior Court of Maricopa County, Arizona, on February 27, 1964. On his appeal the conviction was affirmed. State of Arizona v. Taylor, 99 Ariz. 85, 407 P.2d 59 (1965). Certiorari was denied by the Supreme Court in Taylor v. Arizona, 384 U.S. 979, 86 S.Ct. 1878, 16 L.Ed.2d 689 (1966).

Appellant originally filed his petition for a writ of habeas corpus on April 25, 1968, raising numerous contentions. The State of Arizona filed a response and a memorandum of law. The district court, on May 28, 1968, denied relief under the petition without holding a hearing.

On appeal to this court we reversed. Taylor v. United States (9 Cir. 1970) 424 F.2d 271. In remanding, we directed the trial court to make determinations as to (1) whether the prisoner had exhausted his remedies in the state judicial system; (2) whether there was a deliberate bypass of state remedies; (3) whether the admission of the photograph was a product of an illegal search and seizure, violating the Fourth Amendment; and (4) if there was error of constitutional dimension, was it nevertheless harmless error?

Thereafter, counsel was appointed for the appellant and an evidentiary hearing was held. In addition to the findings of fact made by the trial court, as set forth above, the court found that there was no evidence to support a determination that there had been a deliberate bypass of state remedies. Counsel stipulated, and the court found, that appellant had exhausted his state remedies.

As to the last two questions referred to the district court, it found that (1) the state officers had probable cause to arrest appellant upon seeing him and verifying his name; (2) that appellant was effectively arrested and in custody when he opened the door, and the officer with a gun drawn verified his name and description; (3) that no consent was given to the search of the premises or the seizure of the photograph; and (4) that the search and seizure was incident to a lawful arrest under the law at that date. The district court relied on Williams v. U. S. (9 Cir. 1969) 418 F.2d 159 [later affirmed, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971)], which held that Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) was not retroactive, but applied only to searches incident to arrest conducted after June 23, 1969, the date of *Chimel.* The district court denied relief under the petition.

## I

## THE ARREST

State law determines the validity of an arrest provided it does "not violate the constitutional proscription of unreasonable searches and seizures. . . ." Ker v. California, 374 U.S. 23, 34, 83 S. Ct. 1623, 1630, 10 L.Ed.2d 726 (1963).

"This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States [357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)]; United States v. Di Re, 332 U.S. 581 [, 68 S.Ct. 222, 92 L.Ed. 210] (1948); Johnson v. United States, 333 U.S. 10, 15 n. 5 [, 68 S.Ct. 367, 370, 92 L.Ed.2d 436] (1948). A *fortiori*, the lawfulness of these arrests by state officers for state offenses is to be determined by California law." *Id.* at 37, at 1632 of 83 S.Ct.

The Arizona arrest statute, A.R.S. § 13–1403 (1956), provided at the time of appellant's arrest:

"A peace officer, may without a warrant, arrest a person:

.    .    .    .    .    .

3. When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it."

This portion of the Arizona statute is somewhat narrower than the California statute, Penal Code, § 836 (1970).[1] Arizona case law is in line with *Ker, supra.* State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969).

■ Appellant contends the police officer did not intend to make an arrest. Whether or not an arrest occurred is governed by the facts of the incident and not the subjective intent of the officer. Lowe v. United States (9 Cir. 1969) 407 F.2d 1391, 1396–7; United States v. Smith (9 Cir. 1971) 441 F.2d 539, 540; United States v. Pellegrini (S.D.N.Y.1970) 309 F.Supp. 250, 255. *See also,* United States v. Hall (2 Cir. 1969) 421 F.2d 540, 544, cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970); Williams v. United States (9 Cir. 1967) 381 F.2d 20, 22. A certain set of facts may constitute an arrest whether or not the officer intended to make an arrest and despite his disclaimer that an arrest occurred.

■ The trial court found that one of the officers held a drawn gun and that an arrest occurred. We hold the facts support the court's findings that an arrest occurred.

The question of the validity of a forcible entry into a house without a warrant, on probable cause, is still an open question in the Supreme Court. Jones v. United States, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); Justice Stewart's plurality decision p. 481, 91 S.Ct. p. 2045; Justice Harlan's concurrence p. 492, 91 S.Ct. 2051. But see Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (entry by use of manager's key).

■■ Here there was no question as to legality of the entry. The appellant opened the door when the officers knocked. Absent the question of forcible or unlawful entry into a house, an arrest without a warrant is valid if based on probable cause. Ker v. California, 374 U.S. 23, 35, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); United States v. Mehciz (9 Cir. 1971) 437 F.2d 145; United States v. Maynard (9 Cir. 1971) 439 F.2d 1086; Pineda v. Craven (9 Cir. 9/21/72) 465 F.2d 999, affirming on the basis of the lower court decision. (N. D.Cal.1971), 327 F.Supp. 1062, 1067. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the

---

1. "A peace officer may . . . without a warrant, arrest a person:

.    .    .    .    .

2. When a person arrested has committed a felony, although not in his presence.

3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." Calif. Penal Code, § 836 (1970).

offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

We also hold that on the facts set forth above and found by the trial court, there was clearly probable cause for the arrest.

## II

### THE SEARCH

■ The arrest and search occurred prior to Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Chimel* does not apply to searches prior to June 23, 1969. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Our case is controlled by Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

The photograph was in plain view and the officer was entitled to be present where the photograph was found. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Avey (9 Cir. 1970) 428 F.2d 1159, 1164. Nor did the officers go to the apartment for the purpose of a search. The seizure of the photograph was valid even under the plurality decision in Coolidge v. New Hampshire, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971).

## III

### THE IMPACT OF WARDEN v. HAYDEN

■ Petitioner contends that the evidentiary use of a photograph of him wearing a straw hat of the type found at the scene of the robbery, which was seized by arresting officers in plain view in his bedroom, violated the "mere evidence" rule of Gouled v. United States (1921) 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647.

That doctrine was rejected in Warden v. Hayden (1967) 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, two years after petitioner's conviction was upheld by the Arizona Supreme Court. State v. Taylor, *supra*. Appellant contends that *Hayden* should not be applied retrospectively to his case and that the writ should have been granted.

Adoption of appellant's contention would lead to an exercise in futility. If we were to vacate appellant's conviction by refusing to apply *Hayden* retroactively, the *Hayden* doctrine would nonetheless apply prospectively to trials held after its announcement in 1967. Thus, if appellant were retried, the *Hayden* doctrine would then apply, and the "mere evidence" photograph of him would clearly be admissible.

Recent Supreme Court cases affording prospective-only application do not require that result here.[2] Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965) states that "the Constitution neither prohibits nor requires retrospective effect." Nor did Warden v. Hayden, *supra*, enlarge, spell out or create any constitutional right on which appellant may rely.

*Hayden* abolished what the Supreme Court acknowledged to be an arbitrary and irrational distinction between "mere evidence," in which the Government could assert no property right and therefore could not seize, and fruits or instruments of the crime and contraband which it could seize, nor did it newly apply a rule mandated by the Constitution. The Court noted that:

"Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and

---

2. Our case contains no questions of the validity of the fact-finding process nor such problems as official reliance upon the old rule or deterrence of unlawful police conduct, which were involved in cases denying retroactivity. *See, e. g., Linkletter, supra*; Williams v. United States (9 Cir. 1969) 418 F.2d 159, aff'd, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Retrospective application of *Hayden* is hardly likely to tax or disrupt the administration of justice. Also, the *Hayden* rule is definitional, not deterrent, in purpose.

instrumentalities, fruits of crime, or contraband." 387 U.S. at 301, 87 S. Ct. 1642, at 1647.

"Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same 'papers and effects' may be 'mere evidence' in one case and 'instrumentality' in another." *Id.* at 302, 87 S.Ct. at 1647.

"The 'mere evidence' limitation has spawned exceptions so numerous and confusion so great, in fact, that it is questionable whether it affords meaningful protection." *Id.* at 309, 87 S. Ct. at 1651.

*Hayden,* then, simply redefined to eliminate a logical inconsistence in the law, clarifying a rule from a previous statement which did not afford "meaningful protection." *Hayden* neither created nor abolished a vested right. It merely laid down a rule of evidence, defining what might be seized. If we apply it retrospectively, it raises no constitutional right which the appellant may rely on. If we were to apply it prospectively only, then, as we have shown above, appellant would be bound by the new rule on his retrial. The photograph would be admitted, and the result, in effect, would be the same as the retrospective application which we decide today.

Moreover, the *Hayden* rule has previously been applied, without discussion of retroactivity, to convictions which were final before the announcement of *Hayden.* Clarke v. Henderson (6 Cir. 1968) 403 F.2d 687, 688–89, aff'd after remand sub nom. Clarke v. Neil (1970) 427 F.2d 1322, 1324, cert. denied, 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971); United States ex rel. Spero v. McKendrick (2 Cir. 1969) 409 F.2d 181, 184. *See also,* Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Kendrick v. Nelson (9 Cir. 1971) 448 F.2d 25, 28.

We therefore apply that rule now, and hold that the photograph in issue was lawfully seized and properly admitted, under *Hayden, supra.*

The judgment is affirmed.