139 Ariz. 415 (1984)
678 P.2d 1379
STATE of Arizona, Appellee,
v.
Jose Luis ESPINOSA-GAMEZ, Appellant.
No. 5980-PR.
Supreme Court of Arizona, In Banc.
February 22, 1984.
Robert K. Corbin, Atty. Gen. by William J. Schafer III, Gerald R. Grant and Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.
William J. Redondo, Tucson, for appellant.
CAMERON, Justice.
Defendant, Jose Luis Espinosa-Gamez, was convicted and found guilty of unlawful transportation of marijuana, a Class 2 felony, and sentenced to a mitigated imprisonment *416 term of 5.25 years under the former versions of A.R.S. §§ 13-3401(15), 13-3405(A)(3), 13-701, and 13-801. The defendant appealed and the Court of Appeals, Division Two, reversed defendant's conviction, citing the trial court's failure to grant defendant's motion to suppress as error. We granted the State's petition for review. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3), Rule 31.19, Arizona Rules of Criminal Procedure, 17 A.R.S., and A.R.S. § 12-120.24.
The issues we must decide on appeal are:
I. Should the United States Supreme Court cases of Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) receive retroactive application?
II. Was there probable cause to stop defendant's automobile and open the trunk?
III. Did defendant voluntarily consent to a search of the garbage bags containing marijuana located in the trunk of his automobile?
IV. Was defendant denied effective assistance of counsel?
The facts necessary for a resolution of these issues are as follows. At approximately 5:15 p.m. on 19 January 1981, Agent Beachell of the Drug Enforcement Administration (DEA) Office in Nogales, Arizona, received a phone call from an unidentified informant. According to Beachell, the informant had given accurate and reliable information on ten prior occasions. The informant disclosed that a woman named Gloria Soto would be smuggling marijuana into the United States from Mexico in a brown 1975 Ford LTD, license number AYW-419. At approximately 6:00 p.m. the Customs Computer Center relayed to Agent Beachell that this vehicle had crossed the United States/Mexican border at approximately 5:43 p.m. Within fortyfive minutes of this call Agent Beachell was again contacted by the informant and told that the vehicle was traveling north on I-19. Agent Beachell immediately contacted Officer Fergus and asked him to conduct a surveillance at the Rio Rico exit on I-19. At approximately 6:50 p.m. Officer Fergus began following the vehicle, along with Agent Beachell and another officer, Officer Neck. The vehicle was pulled over to the side of the road, and Agent Beachell left his car and approached the vehicle on the driver's side. The driver rolled down her window, the officer asked her name, and she replied, "Gloria Soto." Agent Beachell then disengaged the keys from the ignition and removed them from the car. The passenger was also asked his name and replied, "Jose Luis Espinoza." The passenger (defendant) was then asked where he lived and he replied, "In Nogales, Sonora, Mexico," and further admitted that he did not have a "permiso" to be in the United States.
Agent Beachell then asked Ms. Soto if the car trunk contained any contraband, and she replied no. At that point Agent Beachell opened the trunk, observed green plastic garbage bags, and smelled the odor of marijuana. Ms. Soto and the defendant were then handcuffed and driven back to the DEA Office in Nogales, along with the vehicle they had been driving. The green garbage bags were not opened at this time.
After arriving at the DEA Office Ms. Soto was advised of her rights, in English, and stated that she understood those rights. When asked if she was the owner of the vehicle she replied that she was not, and that although the vehicle was registered in her name, the defendant was the owner. Ms. Soto was then asked if the officers could have permission to open the garbage bags in the trunk and she replied, "I don't own those bags and it's okay with me."
Defendant was also given his rights, in Spanish, and stated that he understood those rights. He admitted to owning the vehicle and consented to a search of the garbage bags. The officers opened the trunk, removed and opened the bags, and found 151 pounds of marijuana.
*417 Defendant was tried, convicted, sentenced, and appealed to the Court of Appeals, Division Two. The Court of Appeals reversed defendant's conviction, holding that the search of defendant's car was unconstitutional, and therefore defendant's motion to suppress was improperly denied. The State petitioned this court for review of the Court of Appeals decision.
RETROACTIVITY OF GATES AND ROSS
At the time of the arrest in this matter, the United States Supreme Court had not yet handed down its opinions in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Prior to Gates, the cases of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), controlled the constitutionality of a search conducted as a result of information obtained through an informant. Aguilar, supra, held that an officer using hearsay information obtained from an anonymous informant to support a search must show that the informant was credible and that the informant's information was reliable. Aguilar, supra, 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. If the officer could not show this, the tip could nonetheless be saved by corroboration. Spinelli, supra, 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643.
In Gates, police officers received an anonymous letter containing defendants' names, place of residence (Chicago), occupation (drug dealing), method of operation, date and place of defendant's next drug transaction (3 May in Florida), and the fact that defendants were concealing $100,000 worth of drugs in their basement. The police informed the DEA of the letter's contents, and a DEA agent observed some of defendant's activities while in Florida. These activities included defendants riding in a taxi to a nearby motel, leaving the next morning in a car bearing Illinois license plates which were registered to a different car owned by defendants, and traveling north on a highway typically used by those traveling to Chicago. The agent signed an affidavit relating the defendants' activities, and a warrant was issued allowing a search of defendants' residence and automobile.
In abandoning Aguilar and Spinelli and upholding the search, the United States Supreme Court returned to the "totality of circumstances" test for determining probable cause:
This totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception."
* * * * * *
Our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is also applicable to the probable cause standard:
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same  and so are law enforcement officers.
Illinois v. Gates, supra, ___ U.S. at ___, 103 S.Ct. at 2328, 76 L.Ed.2d at 543 (citation and footnotes omitted).
In Ross, supra, a previously reliable informant provided police with information that "Bandit" was selling narcotics stored in his car trunk parked at a certain location. The officers drove to the location, observed the described car, and conducted a license check that revealed the car was registered to the defendant. A computer check on the defendant revealed that he matched the informant's description and had used the alias "Bandit." The officers returned to the area, pulled alongside the car while defendant was driving, and *418 stopped the car. A bullet was found on the car's front seat and a pistol was found in the glove compartment. Defendant was arrested and the car trunk opened, revealing glassine bags containing white powder. The powder was later determined to be heroin. Although a warrant was never obtained, the search was upheld.
In upholding the search, the Ross court held that the scope of a warrantless search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," rather than "the nature of the container in which the contraband is secreted." Ross, supra, 456 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593. This holding required that the court overrule and modify, respectively, the prior cases of Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) and Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In Sanders, "the Court broadly suggested that a warrantless search of a container found in an automobile could never be sustained as part of a warrantless search of the automobile itself." Ross, supra, 456 U.S. at 814, 102 S.Ct. at 2167, 72 L.Ed.2d at 587. The Ross court further stated, however, that the police in Sanders did not have probable cause to search any item in the car except a particular green suitcase. Id. Thus, the court's broad holding was considerably narrowed by the probable cause issue. See id. The Robbins plurality held that "all containers are equally protected by the Fourth Amendment unless their contents are in plain view." Id. at 815, 102 S.Ct. at 2167, 72 L.Ed.2d at 588. In overruling Robbins and modifying Sanders, the Ross court reasoned that
the doctrine of stare decisis does not preclude this action. Although we have rejected some of the reasoning in Sanders, we adhere to our holding in that case; although we reject the precise holding in Robbins, there was no Court opinion supporting a single rationale for its judgment and the reasoning we adopt today was not presented by the parties in that case. Moreover, it is clear that no legitimate reliance interest can be frustrated by our decision today. Of greatest importance, we are convinced that the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history.

Ross, supra, at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593 (emphasis added) (footnote omitted).
In this case, our Court of Appeals followed Aguilar and Spinelli in holding that there was "no evidence as to the underlying circumstance by which the informant had obtained his information and that such was probably accurate." The Court of Appeals further held that the corroboration information was "nothing more than a verification of innocent details." Assuming that the Court of Appeals was correct in its application of Aguilar and Spinelli, the stop and search of the automobile trunk can only be upheld if Gates and Ross would allow the search and if Gates and Ross can properly be applied retroactively.
The United States Constitution neither prohibits nor requires the retroactive application of a constitutional rule of criminal procedure, State v. (Jeryl LaRue) Smith, 112 Ariz. 321, 323, 541 P.2d 918, 920 (1975). The United States Supreme Court, when restricting the admissibility of evidence previously admissible, has stated:
Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.
Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971) (footnote omitted). When restricting evidence previously admissible, the United States Supreme Court has set down the factors that must be considered in applying the decision retroactively. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967). *419 In exclusionary rule cases the Supreme Court has been not only concerned with the enhancement of the truth-finding function, but also with the deterrence of wrongdoing by the police.
This focus in the retroactivity cases on the purposes served by the exclusionary rule is also quite in harmony with the approach taken generally to the exclusionary rule. In United States v. Calandra, 414 U.S. [338] at 348 [94 S.Ct. 613 at 620, 38 L.Ed.2d 561 (1974)], we said that the exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." It follows that "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." Ibid.

United States v. Peltier, 422 U.S. 531, 538-39, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374, 382 (1975). See also Corr, Retroactivity: A Study in Supreme Court Doctrine "As Applied," 61 N.C.L.Rev. 745, 766-67 (1983). Since one of the stated purposes of the exclusionary rule is to deter police misconduct by excluding material evidence of guilt, the courts have been reluctant to apply it retroactively because there is little deterrent effect in "punishing the constable" for violation of a rule that he did not know about at the time he seized the evidence.
The situation is different when, as here, evidence previously excludable by operation of the exclusionary rule is now admissible because of the reversal of a previous rule excluding such evidence. A case in point is Taylor v. Arizona, 471 F.2d 848 (9th Cir.1972), where the defendant was convicted based upon evidence admitted in violation of the "mere evidence" rule of Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). After defendant's conviction, the United States Supreme Court in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), reversed the prior ruling in Gouled v. United States. Defendant contended that Hayden should not be applied retroactively to his case. In rejecting defendant's allegation, the court stated:

Hayden abolished what the Supreme Court acknowledged to be an arbitrary and irrational distinction between "mere evidence" in which the government could assert no property right and therefore could not seize, and fruits or instruments of the crime and contraband which it could seize, * * *.

Hayden neither created nor abolished a vested right. It merely laid down a rule of evidence defining what might be seized. If we apply it retrospectively, it raises no constitutional right which the appellant may rely on.
Taylor v. Arizona, supra, at 852-53.
It is one thing to "punish the constable" by excluding evidence obtained in violation of a new and stricter application of the exclusionary rule which the officers could not anticipate at the time of the seizure. In those instances, the courts are reluctant to apply the rule retroactively except in the most compelling cases. The facts here are quite different in that the officers are not being punished by the application of a new rule, but, on the contrary, their search is sustained by the new rule. The officers have no reason to complain, and the defendant does not have a vested right upon which he can rely in the application of the prior rule. Peltier, supra; Taylor, supra. We also note that admitting the marijuana found in defendant's car trunk would aid the trier of fact in the truth-finding function. Williams, supra.
Finally, we note that in Gates the Aguilar/Spinelli test was incorporated into the Gates' "totality of circumstances" test, Gates, supra, ___ U.S. at ___, 103 S.Ct. at 2332, 76 L.Ed.2d at 548, and in Ross the court stated that, "the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history." Ross, supra, 456 *420 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593. We believe that this language indicates that the United States Supreme Court did not consider Gates and Ross to be a sharp break with the past and that the cases could fairly be applied retroactively. See United States v. Johnson, 457 U.S. 537, 549, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202, 213 (1982). We hold that Gates, supra, and Ross, supra, should receive retroactive application and be applied to the facts in this case.
PROBABLE CAUSE SEARCH OF THE CAR TRUNK
Defendant challenges Agent Beachell's initial opening of the car trunk, asserting that this was an illegal search. Agent Beachell testified that the informant in question had given accurate and reliable information on ten prior occasions. Although this information had not resulted in any prior arrests or seizures, the information had proved trustworthy. The information told Agent Beachell the color, year, make, model, and license number of the vehicle, and this information was later verified by Agent Beachell. The informant stated that Ms. Soto would be the car's driver, which was also true.
In addition to this verified information, the location of the search is important. The automobile was stopped a few miles north of the Arizona-Sonora, Mexico, border on the interstate highway to Tucson. This area is well known as a drug trafficking area, and this fact may be taken into account when determining probable cause. The United States Supreme Court was faced with a similar situation in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In Carroll, the court upheld a warrantless search of a vehicle for contraband liquor, stating that "Grand Rapids is about 152 miles from Detroit, and Detroit and its neighborhood along the Detroit River, which is the international boundary, is one of the most active centers for introducing illegally into this country spirituous liquors for distribution into the interior." Carroll, supra, at 160, 45 S.Ct. at 287, 69 L.Ed. at 554. In the present case, the fact that the informant's tip indicated that defendant's vehicle would be transporting marijuana in an area where marijuana is frequently transported further strengthened the officers' probable cause to search. Not only did the officer have probable cause to believe that the vehicle contained contraband, but probable cause also existed for the belief that the contraband might be removed if the vehicle was not immediately searched. See State v. Axley, 132 Ariz. 383, 391, 646 P.2d 268, 276 (1982).
Under the totality of the circumstances test as set forth in Gates, supra, we believe there was sufficient evidence upon which the officer could have obtained a warrant, and that being the case, the warrantless stopping and searching of the automobile was proper. As was noted in Ross:
The scope of a warrantless search based on probable cause is no narrower  and no broader  than the scope of a search authorized by warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize.
United States v. Ross, supra, 456 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593 (footnote omitted).
CONSENTUAL SEARCH OF GARBAGE BAGS
Agent Beachell and Officer Chaboya of the Department of Public Safety both testified at the hearing on the motion to suppress concerning the search of the garbage bags containing marijuana. They stated that both the driver, who was the registered owner of the vehicle, and the defendant indicated that the defendant was the owner, the registration to the contrary notwithstanding. Both gave their permission to search the garbage bags. The defendant was asked about the ownership of the vehicle and defendant stated he was the owner. Agent Beachell testified:

*421 A He stated that he was the owner of the vehicle, that he gave his consent to search the garbage bags.
Q Who asked him?
A Chaboya.
Q And he said go ahead and search them?
A Yes.
Q You heard him say that?
A Yes.
Officer Chaboya testified that he advised the defendant of his rights. Chaboya further testified:
A I first questioned him about the ownership of the vehicle.
Q What did you ask him?
A As to who owned the vehicle.
Q What did he respond?
A Which he stated that he did.
Q Okay. Then what happened?
A I then asked him if he would give his permission to open the packages that were in the trunk of his vehicle.
Q What did he respond?
* * * * * *
A He answered yes, go ahead.
We believe the defendant's consent to search the garbage bags was voluntarily given and valid. See State v. (Joseph Clarence) Smith, 123 Ariz. 231, 241, 599 P.2d 187, 197 (1979). We also believe that under the rule in United States v. Ross, supra, the officers could have opened the garbage bags even absent the consent of Soto and the defendant. The United States Supreme Court has said:
In the same manner, an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. Certainly the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container. An individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened. These interests must yield to the authority of a search, however, which  in light of Carroll  does not itself require the prior approval of a magistrate.
United States v. Ross, supra, 456 U.S. at 823-24, 102 S.Ct. at 2171-72, 72 L.Ed.2d at 592-93 (footnote omitted). We find no error.
INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant finally argues he was denied effective assistance of counsel. Defendant contends that his trial counsel did not file a separate motion to suppress, and did not adequately attack the credibility of the informant. The record shows that at the pretrial stage, before the court had severed the trial of defendant and Gloria Soto, Gloria Soto filed a motion to suppress. Defendant's attorney filed a written motion joining in Soto's motion to suppress. At the hearing on the motion to suppress, both attorneys cross-examined the officers.
Admittedly, neither the defendant's attorney nor Soto's attorney pursued the question of the informant's credibility, accepting the officer's testimony that the informant had been reliable in at least ten prior cases. We cannot say from the record, however, that either counsel was wrong in not extensively cross-examining on this aspect of the case. It could well be that cross-examination would have resulted in bolstering, rather than demolishing, the credibility of the informant. Neither does it appear that defendant was prejudiced by this omission on the part of his counsel.
In Arizona, an attorney must exhibit a minimal standard of competence on behalf of his client. State v. Watson, 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). Actions which appear to be a choice of trial tactics will not support an allegation of ineffective assistance of counsel. State v. Robles, 135 Ariz. 92, 96, 659 P.2d 645, 649 (1983) (citing Watson, supra). We have reviewed the record and do not find that defendant's attorney was ineffective in his representation of defendant. We find no error.
*422 Defendant's conviction and sentence are affirmed.
HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.